UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00016-TBR

JAY'S ELECTRIC, INC.,                                                                     Plaintiff

v.

NECA/IBEW FAMILY MEDICAL CARE                                             Defendants
TRUST FUND, *et al*.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's motion for summary judgment. (Docket #21). Plaintiff Jay's Electric, Inc. has responded. (Docket #26). Third Party Defendant Robert D. Smothers has responded. (Docket #28). Defendant has replied. (Docket #27, 29). These matters now are ripe for adjudication. For the foregoing reasons, Defendant's motion (Docket #21) is DENIED.

BACKGROUND

This action arises out of Robert D. Smothers' receipt of insurance benefits from NECA/IBEW Family Medical Care Trust Fund ("FMCP"). Smothers, a farmer, was ostensibly employed by Jay's Electric, Inc. ("Jay's Electric") and joined the union as an electrician. FMCP claims Smothers and Jay's Electric concealed Smothers' true occupation so that Smothers would qualify for insurance benefits. Smothers and Jay's Electric claim they informed the union that Smothers was not an electrician and the union approved Smothers' membership and qualified Smothers for insurance coverage.

FMCP is a multiemployer health and welfare plan established by the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA"). FMCP provides medical benefits for employees in the electrical industry. "Employers agree to participate in the FMCP pursuant to collective bargaining agreements with the IBEW or one or more of its affiliated local unions." (Docket #21).

Jay's Electric, Inc. is an employer that has signed an IBEW collective bargaining agreement. Employees of Jay's Electric receive medical coverage from FMCP. Jay Riley is the president of Jay's Electric.

Robert D. Smothers is a full-time farmer who has never held the occupation of electrician.

In late 2010, Smothers spoke with Riley over breakfast about how he was unable to afford his rising insurance premiums. Riley offered to help by talking to Ricky Peck, Business Manager for IBEW Local Union 816, to see if Smothers could receive coverage through the union. The parties strongly dispute whether Peck was aware that Smothers was a farmer and not an electrician. Riley claims he informed Peck that Smothers needed insurance and asked Peck to inquire if Smothers could be eligible if he joined the union, even if he did not perform electrical work. Similarly, Smothers claims he told Peck that he was not an actual employee of Jay's Electric.

Smothers was admitted to the union and began paying dues. Smothers paid Jay's Electric the equivalent amount that Jay's Electric was required to contribute for Smothers to receive insurance benefits. Jay's Electric listed Smothers as a CW-1 employee on its monthly contribution remittance reports and reported that Smothers

worked 160 hours a week. However, Smothers performed no work for Jay's Electric, nor was he paid by Jay's Electric.

Smothers received health insurance from FMCP from 2011 to 2014. In 2014, FMCP conducted a routine audit of Jay's Electric and discovered that Jay's Electric had no payroll records or W-2s for Smothers. FMCP also discovered that although Jay's Electric submitted records stating Smothers worked 160 hours per month, Smothers had never actually worked for Jay's Electric.

From February, 2011 through June, 2014, FMCP paid $211,419.86 in medical and prescription claims on behalf of Smothers and his dependents. FMCP now asserts that Jay's Electric and Smothers committed fraud or negligent misrepresentation. In response, Smothers and Jay's Electric argue the union, through Peck, was fully aware of Smothers' status as a farmer and approved his membership.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to

each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

A claim of fraud presents a "heightened burden" of proving a claim by "clear and convincing evidence." *In re Auto Specialties Mfg. Co.*, 153 B.R. 503, 506 (W.D. Mich. 1993); *Bradford*, 886 F.2d at 1479. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

DISCUSSION

FMCP claims Jay's Electric and Smothers committed fraud. In response, Jay's Electric and Smothers argue they informed Peck of Smothers' status as a farmer and he approved Smothers' application. Therefore, they argue, FMCP should either be equitably estopped from claiming fraud or the Court should find Peck acted with apparent authority. FMCP also claims Jay's Electric violated Section 515 of ERISA. The Court will address the issue of (I) fraud; then turn to (II) Section 515 of ERISA.

I.      Fraud.

FMCP claims Jay's Electric and Smothers each engaged in fraud or made negligent misrepresentations.  In response, Jay's Electric and Smothers argue they disclosed Smothers' status as a farmer and Peck acted with apparent authority in authorizing Smothers to receive insurance benefits.  Jay's Electric and Smothers further argue FMCP should be equitably estopped.  The Court will state the legal standard for each claim and defense and then address why disputed factual issues make summary judgment inappropriate at this stage.

There are six elements to a fraud claim:  (1) the declarant made a material representation to the plaintiff, (2) this representation was false, (3) the declarant knew the representation was false or made it recklessly, (4) the declarant induced the plaintiff to act upon the misrepresentation, (5) the plaintiff relied[1] upon the misrepresentation, and (6) the misrepresentation caused injury to the plaintiff.  *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).  "The tort of negligent misrepresentation differs from fraudulent misrepresentation only in that the former tort demands only that a false representation or concealment be made negligently, rather than recklessly or with knowledge of its falsity."  *Clark v. Danek Med., Inc.*, 64 F. Supp. 2d 652, 657 (W.D. Ky. 1999).  A fraud claim must be proven by "clear and convincing" evidence.  *Flegles*, 289 S.W.3d at 549.

"[A]pparent authority arises in those situations where the principal causes persons with whom the agent deals reasonably to believe that the agent has authority." *Anderson v. International Union, United Plant Guard Workers*, 150 F.3d 590, 593 (6th

---

[1] "The plaintiffs reliance, of course, must be reasonable, or, as the Restatement states, 'justifiable.'" *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citation omitted).

Cir. 1998). "It is well-settled that apparent authority (1) results from a manifestation by a person that another is his agent, regardless of whether an actual agency relationship has been formed and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Id*; *see also Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).

"[T]he elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443 (6th Cir. 2010).

FMCP claims Jay's Electric and Smothers committed fraud by falsely representing that Smothers was eligible for insurance benefits. Specifically, FMCP claims Jay's Electric made material misrepresentations when it: listed Smothers as a CW-1 employee; reported hours worked and wages earned by Smothers; and responded to an inquiry that Smothers was a consultant who was paid benefits as compensation for his work. (Docket #21). FMCP claims Smothers made material misrepresentations when he represented he was a CW-1 electrician working for Jay's Electric on his FMCP Enrollment Form. (Docket #21).

In response, Jay's Electric and Smothers do not dispute that they made these misrepresentations, but argue they did so at the direction of Peck. Riley and Smothers

each testified they informed Peck that Smothers was a farmer and relied on Peck's instructions. (Docket #26-2; 26-3). Riley testified that Peck told him what wages and hours to list for Smothers. (Docket #21-10). Riley testified that he relied on Peck's assessment of Smothers' eligibility and Peck's instructions "[b]ecause that is his job as the business agent to tell me if I can do it." (Docket #26-3).

Peck claims he was unaware that Smothers would not work for Jay's Electric, but appears to contradict himself when he states: "Jay [Riley] and I and him discussed about him [Smothers] working out at the chicken barns." (Docket #26-1). Peck is unsure whether Smothers' need for health insurance was ever discussed. Peck also reported Smothers' application to his superiors in the union, which Peck stated was a rare occurrence. Furthermore, according to Peck, he represented FMCP "to some degree" and stated he had authority to enter into contracts. (Docket #26-1). In his testimony, Peck was reluctant to directly contradict Riley and Smothers' version of events. Both sides cite Peck's testimony in support of their position.

The Court finds that the defenses raised by Smothers and Jay's Electric require factual determinations which make this case inappropriate for summary judgment. Similar cases have reached the same conclusion. For instance, in *Anderson*, three former union officials were promised early retirement by the union president and the union's Executive Board. *Anderson v. International Union, United Plant Guard Workers*, 150 F.3d 590 (6th Cir. 1998). These officials were not eligible for early retirement under the terms of the existing pension plan. However, acting on the representations by the union president and Executive Board, the officials accepted early retirement. The modification to the pension plan was challenged and the Executive

Board voted to defer taking action. The union officials filed suit. The Sixth Circuit held it was an issue of fact whether the union president and union Executive Board acted with apparent authority justifying the union officials' reliance. *Anderson*, 150 F.3d at 593 ("Specifically, a party may rely upon the apparent authority of union representatives to enter into an agreement where there is basis for such reliance") (citing *National Labor Relations Bd. v. Truckdrivers, Chauffeurs and Helpers, Local Union No. 100*, 532 F.2d 569 570-71 (6th Cir. 1976). Similarly, in a real estate fraud case, the Kentucky Court of Appeals reversed summary judgment on the grounds that conflicting evidence about whether a realtor knew property had been damaged by a flood created an issue of fact. *Waldridge v. Homeservices of Kentucky, Inc.*, 384 S.W.3d 165, 174-75 (Ky. Ct. App. 2011).

FMCP stresses that there are several signs that should have alerted Jay's Electric and Smothers to the fact that Smothers did not qualify for insurance benefits, regardless of what Peck may have said. FMCP notes the unusual payment arrangement, in which Smothers paid Jay's Electric who then made contributions. Smothers was also required to state his job classification and circled "Construction Wireman." When FMCP initially questioned Jay's Electric about Smothers' status as an employee, Jay's Electric stated his insurance benefits were compensation for his work. All of these facts undercut Jay's Electric and Smothers' assertion that they believed Smothers was properly qualified for insurance benefits. However, it is not enough for a party to show that their claims are more plausible. *Tilley v. Kalamazoo Cty. Rd. Comm'n*, 777 F.3d 303, 314 (6th Cir. 2015) (reversing grant of summary judgment even though "[t]here are obvious reasons to doubt the veracity of Tilley's assertion that in the face of a

suspected heart attack he would have remained at work to complete the then-due assignment"). This is especially true when a party moves for summary judgment on a fraud claim, which must be proven by clear and convincing evidence. *Liberty Lobby*, 477 U.S. at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. at 266. The Court finds there is a disputed material issue of fact and accordingly will deny FMCP's motion for summary judgment.

## II.  ERISA.

FMCP also argues that Jay's Electric violated Section 515 of ERISA. Section 515 requires that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions" of the governing collective bargaining agreement. 29 U.S.C. § 1145. In other words, if a company fails to make contributions as required by the collective bargaining agreement, Section 515 of ERISA allows a multiemployer plan to assert a claim to recover those contributions.

In this case, the collective bargaining agreement required employers to pay CW-1 electricians $9.76 per hour and make a contribution of $4.00 per hour to the multiemployer plan. FMCP does not allege that Jay's Electric failed to make the required $4.00 per hour contribution. Instead, FMCP argues Jay's Electric violated Section 515 because it did not actually pay Smothers $9.76 per hour. Therefore, FMCP argues Jay's Electric did not make the accompanying $4.00 per hour contributions "in accordance with its obligation under a collectively bargained agreement and the plan documents." (Docket #21).

The Court finds this interpretation stretches the language of Section 515 too far. FMCP has cited no cases which interpret Section 515 in this manner. Instead, each case reviewed by this Court interprets Section 515 as permitting multiemployer plans to recover unpaid contributions from employers. *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Fund v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998) ("Congress enacted section 515 in order to permit multiemployer plans to 'rely upon the terms of collective bargaining agreements and plans as written, thus permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law'") (citation omitted); *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015) ("§ 515 of ERISA . . . protects and streamlines the procedure for collecting delinquent contributions owed to ERISA plans by employers by limiting 'unrelated' and 'extraneous' defenses"); *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 563 (6th Cir. 2015); *Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 768 (W.D. Mich. 2008). As there is no dispute that Jay's Electric did pay contributions, the Court finds Section 515 to be inapplicable to this case.

## CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Defendant's motion for summary judgment (Docket #21) is DENIED.

cc:     Counsel